# IN THE COURT OF APPEALS OF IOWA

No. 21-0926
Filed October 6, 2021

**IN THE INTEREST OF K.R.-W.,**
**Minor Child,**

**J.R.-W., Father,**
    Appellant,

**K.E., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Wapello County, William S. Owens, Associate Juvenile Judge.

A mother and father separately appeal from the termination of their parental rights to their child. **AFFIRMED ON BOTH APPEALS.**

Kevin S. Maughan, Albia, for appellant father.

Patricia J. Lipski, Washington, for appellant mother.

Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

Sam K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

Considered by Tabor, P.J., Greer, J., and Danilson, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**DANILSON, Senior Judge.**

A mother and father separately appeal from the termination of their parental rights to their child, K.R.-W., born in 2019. Both contend the State failed to prove the grounds for termination cited by the juvenile court and the court erred by not placing the child in a guardianship with a maternal cousin. The mother further contends the Iowa Department of Human Services failed to make reasonable efforts toward reunification. Upon our review, we affirm on both appeals.

## I.    *Background Facts and Proceedings*

This family came to attention of the department in May 2019, when the mother tested positive for methamphetamine and THC upon admittance to the hospital to give birth to K.R.-W., whose umbilical cord also tested positive for methamphetamine. The parents agreed to a safety plan that the mother would live with her grandfather, not be the child's sole caretaker, and the parents' contact with the child would be supervised. Both parents are convicted felons, on probation, and have lengthy criminal histories. The child was adjudicated in need of assistance.

"[F]rom the beginning of the time that the safety plan was in place," the department had "concerns that [it] was not being followed," including the parents providing unsupervised care to the child and not allowing providers into the home. By August, the mother had several warrants for her arrest due to probation violations and theft charges. In September, the mother was placed in a halfway house at the request of her probation officer. The parents agreed to the child's placement in the care of the mother's cousin and her husband. Near that same time, the father tested positive for methamphetamine.

The department learned the mother was "watering down her UA's at the halfway house" and "signing out" for visits with the child that were not taking place. She was arrested for probation violations. In December, the father was also arrested for probation violations. Both parents declined visits with the child while they were incarcerated. The father was released in February 2020, immediately used methamphetamine, and reported he was waiting for a spot at a halfway house. In May, he was arrested and placed in jail due to probation violations. About a week later, the mother was released from prison. For the next six months, it was "very difficult" for the department to contact the mother, but she did attend most of her twice-weekly supervised visits. The mother did not comply with drug testing until December, at which time she tested positive for methamphetamine. Meanwhile, the State initiated termination of parental rights proceedings.

The termination hearing took place over two days in April and May 2021. At the time of the hearing, the child was almost two years old and he had been placed with the maternal cousin outside of the parents' care "since he was four months old." During that time, the parents had been in and out of jail, inconsistently attended substance-abuse and mental-health treatment, and continued to use methamphetamine. The mother reported her last usage was in January 2021, but her probation officer stated she had admitted usage in February. There were also concerns that the mother's UA's had been "tampered with," and the mother declined to provide an "observed UA" approximately one week before the termination hearing. The mother had an active warrant for her arrest. Similarly, the father had "pretty consistently" used methamphetamine through the life of this case. His longest period of sobriety was one month, during inpatient treatment

from February to March 2021, and he admitted he had used methamphetamine immediately before entering treatment. The father had pending criminal charges, including possession of methamphetamine with intent to deliver and possession of a firearm as a felon.

Although the parents' visits with the child generally went well, the visits had not progressed beyond fully supervised. The department caseworker testified, "[W]e just haven't ever had any kind of length of period of time that either of them have demonstrated sobriety in order to decrease supervision on those interactions." The guardian ad litem and department recommended termination of parental rights. The guardian ad litem opined, "I don't think the court has any choice other than to terminate"; "Neither parent is able to take care of [the child] at this time, and he needs immediate permanency." The department noted the child was "comfortable and bonded" to his care providers, who had "been approved to be a preadoptive home if it's needed."

In July 2020, the court entered its order terminating parental rights pursuant to Iowa Code section 232.116(1)(h) (2020). The mother and father separately appeal.

## II.    *Standard of Review*

We review termination-of-parental-rights proceedings de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019). Upon our review, our primary consideration is the best interests of the child, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the child's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011).

### III. Grounds for Termination

The mother and father both challenge the sufficiency of the evidence supporting the grounds for termination cited by the juvenile court. They do not contest the child is three years of age or younger, has been adjudicated a child in need of assistance, and has been removed from the parents' physical custody for at least six of the last twelve months. *See* Iowa Code § 232.116(1)(h)(1)–(3). But they claim the State failed to show by clear and convincing evidence that the child could not be returned safely to their care at the time of the termination hearing. *See id.* § 232.116(1)(h)(4).

The father argues that he "had completed inpatient substance abuse treatment," "continued to participate in psychiatric treatment and medication management," "maintained a job since October of 2020," and "participated in visits." The mother makes a similar claim, stating she "was following the terms of her probation," had maintained employment and a residence with her grandfather, and "was participating regularly in visits with the child." Both parents point out that there were "no safety concerns" with parenting during visits.

Despite some bouts of progress, the record supports the department's "concerns that neither parent has demonstrated sobriety for any length of time." With regard to the father, the caseworker observed, "He did complete his inpatient. What I told him is that was a good, positive thing. I just, you know, wish that would have happened earlier in the case where his sobriety could be monitored, you know, for a length of time in the community . . . ." With regard to the mother, the caseworker noted she "has never been honest . . . about her usage" and opined that it was "concern[ing] that she's trying to be evasive . . . with her usage." There

were also continuing concerns about the parents' patterns of criminal charges, probation violations, and incarceration. The caseworker noted that "with both of them having those probation conditions, and [the father] has some things that haven't even been addressed fully as far as charges, it is very concerning that [K.R.-W.] would be left without a parent." On this issue, the juvenile court found:

> Both [the father] and [the mother] have engaged in regular interaction with [K.R.-W.], but due to their on-going issues with the criminal justice system and continued concerns regarding their use of illegal drugs (either as a result of positive tests or their failure or refusal to participate in testing) those visits have never progressed beyond being fully supervised.
> In sum, neither parent is in a position to have [K.R.-W.] placed with them either now, or in the foreseeable future. [K.R.-W.] is a child in need of permanency and the best way for that to be established is through termination and adoption.

Based on these and the other facts detailed above, we concur with the court's assessment that K.R.-W. could not be returned to the care of either parent at the time of the termination hearing. The requirements of Iowa Code section 232.116(1)(h) were satisfied by clear and convincing evidence in respect to both parents.

Termination also must serve the child's best interests. *See* Iowa Code § 232.116(2). The caseworker believed that maintaining the status quo would "open [K.R.-W.] up to additional removals in the future," stating, "I don't believe [the parents] demonstrated the ability throughout the life of this case to maintain sobriety which would lead . . . to continued trauma [for the child]." The juvenile court similarly found: "Neither [the mother] nor [the father] have taken advantage of the more than ample time and opportunity provided to achieve reunification. [K.R.-W.] is a child that needs permanency, and neither parent is in a position to

provide [K.R.-W.] the permanency the child needs and deserves." Upon our review, we conclude termination is in the child's best interests.

## IV.    *Guardianship*

The mother and father both claim the court erred by not placing the child in a guardianship with a relative—the maternal cousin—rather than terminating their parental rights. *See id.* § 232.116(3)(a). In most cases, however, "a guardianship is not a legally preferable alternative to termination." *In re A.S.*, 906 N.W.2d 467, 477 (quoting *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017)). This case is no exception. K.R.-W. is under the age of three, has been out of his parents' care for all but four months of his life, and needs a long-term, permanent placement. As the court observed:

> By their very nature, guardianships can be modified or terminated. So placing the child in a guardianship would prevent the child from reaching much deserved permanency. The parents have not presented a compelling reason why this is an exceptional case warranting establishment of a guardianship instead of termination.
> In sum, given the age of the child, the length of time the child has been removed, parents' lack of substantial progress toward reunification, and the availability of other viable permanency options it is clear guardianship would not be appropriate.

We concur in the court's finding that a guardianship is not an appropriate alternative to termination in this case, and we further conclude no permissive statutory exception should be applied to preclude termination.

## V.    *Reasonable Efforts*

The mother also contends the department failed to make reasonable efforts toward reunification. Our courts have recognized that the State must show reasonable efforts toward reunification "as a part of its ultimate proof" that grounds for termination exist. *See, e.g., In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000).

Specifically, the mother challenges the department's "refus[al] to authorize other suitable persons to supervise additional visits between the child and his parents, despite the FSS provider's reports that parents' visits were going well with no safety or parenting concerns."[1]

To the contrary, the record shows that from the time the initial safety plan was entered, the mother's grandfather (and later her father as well) were approved to supervise the parents' interactions with the child. Unfortunately, "[t]hey proved to be deceitful, dishonest," because they "said they were supervising their interactions, and they were not," so "those two got taken off the list." The mother's cousin (the child's current placement) was "agreeable to supervising," but then "asked to stop being in that role." And later, the maternal grandmother was approved to supervise visitation, but subsequently refused to supervise visits because the mother was "treating [her] horribly." In addition to those relatives, one of the mother's friends "didn't pass a background check" and the caseworker declined to complete background checks on neighbors, explaining: "I didn't feel like I could put anybody in that position because of how intimidating and manipulative [the mother] is. I would not put a neighbor lady in that position. I feel like it almost needs to be a professional role because of her intimidation and her manipulation and dishonesty."

Even so, shortly before the termination hearing, the department increased visits to three hours. The caseworker explained, "Recently we did go ahead and increase those by an hour. . . . I couldn't—didn't feel like I could decrease the

---

[1] Although the State contends the mother failed to preserve error on this claim, we choose to address the issue.

supervision, but we did add an hour to those each, so there was an actual full six hours of provider-supervised instead of four." We note the mother's track record of inconsistent participation in substance-abuse and mental-health treatment, probation violations and criminal activity, and refusals to provide drug screens. The mother could only be successful or participate in additional services if she attended treatment and addressed her drug-related and criminal issues. We find the department made reasonable efforts toward reunification.

Having addressed the issues raised on the parents' appeals, we affirm the termination of their parental rights.

**AFFIRMED ON BOTH APPEALS.**